IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MERIAL LIMITED and MERIAL SAS,   *

    Plaintiffs,   *

vs.   *

                     CASE NO. 3:12-CV-154 (CDL)

CEVA ANIMAL HEALTH LLC and CEVA *
SANTÉ ANIMALE, S.A.,

     *

    Defendants.

_____   *

O R D E R

    Plaintiffs Merial Limited and Merial SAS ("Merial") are assignees of U.S. Patent No. 6,096,329 ("the '329 Patent"). The '329 Patent claims a pesticide treatment that is intended to eliminate fleas and ticks on dogs and cats using a chemical formulation that consists of two active ingredients, fipronil and methoprene, and inactive ingredients that serve as an adjuvant for the effective delivery of the active ingredients. Using the '329 Patent formulation, Merial developed a financially successful product known as Frontline Plus. Merial alleges that Defendant Ceva Santé Animale, S.A. ("Ceva France") has taken significant, concrete steps to sell, use, or offer for sale generic Frontline Plus products and that such conduct constitutes planned infringement of the '329 Patent. Merial further alleges that Defendant Ceva Animal Health LLC ("Ceva USA") has induced Ceva France's planned infringement of the '329

Patent.  Merial seeks an injunction against the introduction of Defendants' generic Frontline Plus products.

Presently pending before the Court is Defendants' Motion to Dismiss (ECF Nos. 18 & 20). Defendants contend that the Court lacks jurisdiction over Ceva France.  For the reasons set forth below, the Court finds that the present record is not sufficiently developed for the Court to make a final determination as to whether personal jurisdiction may be exercised over Ceva France based on Ceva France's own contacts with Georgia.  But the Court also finds that the record is sufficient to authorize limited jurisdictional discovery. Merial has pointed to evidence that Ceva France, either directly or through Ceva USA, sells a number of its products in the United States.  Merial also pointed to evidence of a close relationship between Ceva France and Ceva USA.  Based on this evidence, the Court will permit Merial to engage in jurisdictional discovery to determine the extent of Ceva France's direct contacts with Georgia and the scope of the relationship between Ceva France and Ceva USA.  Accordingly, Defendants' Motion to Dismiss as to Ceva France is denied.

Defendants also contend that Merial's Amended Complaint fails to state a claim against Ceva USA for induced infringement.  As discussed below, the Court finds that Merial's Amended Complaint states a claim against Ceva USA.

DISCUSSION

**I.  Merial's Claims Against Ceva France**

Ceva France asserts that it is not subject to personal jurisdiction in Georgia and seeks dismissal under Federal Rule of Civil Procedure 12(b)(2).  In a patent case such as this, the Court must apply the law of the Federal Circuit in determining whether it may exercise personal jurisdiction over the accused infringer.  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012).  No jurisdictional discovery has taken place, so Merial needs to "only show a *prima facie* case for personal jurisdiction."  *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).  The Court "must accept uncontroverted allegations in [Merial]'s complaint as true and resolve any factual conflicts in [Merial]'s favor."  *Id.*

The personal jurisdiction determination is generally "a two step inquiry: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process."  *Id.* (internal quotation marks omitted).  If the forum state's long-arm statute is "coextensive" with due process, then "the inquiry collapses into whether jurisdiction comports with due process."  *Id.* (internal quotation marks omitted).  Apparently assuming that Georgia's long-arm statute is coextensive with due process, Ceva France focuses its personal jurisdiction argument exclusively on

whether the exercise of jurisdiction comports with due process.[1] Ceva France did not address Georgia's long-arm statute in any of its briefing.  The Court therefore concludes that Ceva France has waived any personal jurisdiction defense based on Georgia's long-arm statute to the extent that the Georgia long-arm statute is more restrictive than due process limitations.  *See* Fed. R. Civ. P. 12(h)(1) (explaining that a party waives a defense under Rule 12(b)(2) by omitting it from its motion to dismiss).

Merial's primary argument is that the Court may exercise personal jurisdiction over Ceva France based on Ceva USA's contacts with Georgia.  Merial also argues that Ceva France is subject to personal jurisdiction in Georgia because of its "direct contacts with Georgia."  Pls.' Opp'n to Defs.' Mot. to Dismiss 14, ECF Nos. 22 & 24 [hereinafter Pls.' Opp'n].  The Court will address each of Merial's jurisdictional arguments in turn.

A.  Jurisdiction Based on Ceva France's Own Conduct

The first question for the Court is whether the Court may exercise personal jurisdiction over Ceva France based on Ceva France's own contacts with Georgia.

---

[1] Georgia's long-arm statute is not coextensive with due process. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010).

### 1.   Factual Allegations

Merial contends that Ceva France has a "direct presence in Georgia" for three reasons.[2]   *Id.* at 4.   First, Ceva France and Ceva USA introduced a poultry vaccine product, Vectormune HVT-LT, at the International Poultry Exposition in Atlanta, Georgia. Pls.' Opp'n Ex. 16, Press Release, Ceva Animal Health Introduces Vectormune® HVT-LT (Jan. 23, 2012), ECF No. 22-19.   Second, Ceva France has participated in the International Poultry Exposition in Atlanta, Georgia, by having a booth.   Pls.' Opp'n Ex. 17, Photograph of Booth with Ceva France's Logo, ECF No. 22-20. Third, Merial contends that Ceva France is an Elite Sponsor for the upcoming "International Production & Processing Expo," which will be held in Atlanta, Georgia.   Howell Decl. ¶ 3, ECF No. 22-1 (stating that the sponsor link on the Expo's website "links directly to Ceva France's website").

### 2.   Discussion

"There are two types of personal jurisdiction—general and specific."   *Grober*, 686 F.3d at 1345.   "General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently 'continuous and systematic,' even when the

---

[2] Merial also asserts that Ceva France contracted with a distributor to sell its synthetic pheromone-based behavior modification spray products in the United States, including Georgia.   The evidence Merial cited in support of this allegation states that Ceva France's behavior modification spray products are sold to retailers and customers in *Kansas*, but the evidence does not mention Georgia.   Pls.' Opp'n Ex. 10, Compl. ¶ 15 in *Ceva Santé Animale, S.A. v. Nutri-Vet, LLC*, Civil Action No. 2:07-2532 CM-DJW (D. Kan. Oct. 30, 2007), ECF No. 22-13.

cause of action has no relation to those contacts. *Id.* at 1346. The present record establishes that Ceva France has participated in an annual poultry trade show in Georgia and that Ceva France sells its synthetic pheromone-based behavior modification spray products in the United States through a distributor, though there is nothing in the present record that states the volume of those sales in Georgia. These contacts are not continuous and systematic. Therefore, Merial has not established a prima facie showing of general jurisdiction over Ceva France.

Specific jurisdiction "can exist even if the defendant's contacts are not continuous and systematic." *Id.* For specific jurisdiction to exist, the nonresident defendant must purposefully direct its activities at residents of the forum state, the claim must arise out of or relate to the nonresident defendant's activities in the forum state, and the assertion of personal jurisdiction must be reasonable and fair. *Id.* The present record establishes that Ceva France has a direct presence in Georgia based on its participation in an annual poultry trade show in Atlanta and that Ceva France's participation in that trade show is related to its poultry vaccine product. There is no allegation or evidence, however, that the present action regarding a flea and tick product for dogs and cats arises out of or relates to Ceva France's activities related to its poultry vaccine product. Therefore,

the present record does not establish specific jurisdiction over Ceva France.

B.   Jurisdiction Based on Ceva USA's Conduct

It is undisputed that Ceva USA is subject to general personal jurisdiction in Georgia.  The Court must therefore decide whether the relationship between Ceva France and Ceva USA provides a basis for the Court to exercise personal jurisdiction over Ceva France.

1.   Factual Allegations

Ceva USA is a Delaware limited liability company.  Strait Decl. ¶ 7, ECF No. 20-3.  Ceva U.S. Holdings, Inc., a wholly-owned subsidiary of Ceva France, owns 70% of the membership interests of Ceva USA.  *Id.* ¶ 3.   Summit VetPharm Holding Corporation owns 18% of the membership interests of Ceva USA, and Sumitomo Corporation of America owns 12%.  *Id.*

There is significant evidence that Ceva France and Ceva USA are closely related.  Ceva France describes itself and its subsidiaries as "One Ceva." Pls.' Opp'n Ex. 18, Ceva France 2010 Annual Report 14-15, ECF No. 22-21; Pls.' Opp'n Ex. 20, Ceva France 2009 Annual Report 47-48, ECF NO. 22-23.  Ceva USA and Ceva France describe Ceva as "a global company with one focus." Pls.' Opp'n Ex. 4.1, Ceva Brochure Part 1 at 2, ECF No. 22-5; *see also* Pls.' Opp'n Ex. 4.3, Ceva Brochure Part 3 at 12, ECF No. 22-7 (providing Ceva France's web address but stating that

the brochure's copyright belongs to Ceva USA).  Ceva France has
referred to Ceva USA as its "U.S. business unit" or as Ceva's
"North America Zone headquarters."  Pls.' Opp'n Ex. 5, News
Release, Ceva Animal Health growth affirms "together, beyond
animal health" initiative, www.ceva.us/us/News-Media/Media-
Resources/News-Releases/Ceva-Animal-Health-growth-affirms-
together-beyond-animal-health-initiative (Aug. 29, 2011), ECF
No. 22-8 [hereinafter Aug. 29, 2011 News Release]; Pls.' Opp'n
Ex. 6, News Release, Ceva acquires CentaurVA Animal Health (Oct.
3, 2011), ECF No. 22-9 [hereinafter Oct. 3, 2011 News Release];
*see also* Pls.' Opp'n Ex. 19, Ceva France 2011 Annual Report 10,
ECF No. 22-22 (stating that Ceva France's global operations
consist of six zones, including North America).  Ceva USA has
also stated that it represents Ceva France's presence in the
United States.  Pls.' Opp'n Ex. 7, Our history,
www.ceva.us/us/About-us/Our-history, ECF 22-10.  Ceva France is
the registrant for Ceva USA's website.  Pls.' Opp'n Ex. 11,
Whois Report for ceva.us, ECF No. 22-14.

It is undisputed that Mark Prikazsky serves as president of
Ceva USA and CEO of Ceva France.  It is undisputed that Didier
Calmejane is CFO of Ceva USA and that he also performs work for
Ceva France, so Ceva France pays 40% of his salary.  Merial
pointed to evidence that at least two other employees have
served both companies.  Valerie Mazeaud, who is currently

general counsel for Ceva France, Mazeaud Decl. ¶ 1, ECF No. 20-4, previously served as secretary for Ceva USA's predecessor, Ceva Animal Health, Inc.  Pls.' Opp'n Ex. 30, Agreement of Merger 3, ECF No. 22-33.  Arnaud Bourgeouis, who is currently global director of Ceva France's biology business unit,  Raoul Decl. ¶ 9, ECF No. 12-3, previously served as president of Ceva USA's predecessor, Ceva Animal Health, Inc.  Pls.' Opp'n Ex. 30, Agreement of Merger 3, ECF No. 22-33.

Ceva France sells certain products in the United States through Ceva USA.  For example, Ceva USA issued a news release stating that Ceva USA is responsible for several of Ceva France's "key companion animal products," including "the Vectra® line of parasiticides, D.A.P.® and Feliway® pheromone behavior aids and Senilife® neuroprotection for aging pets."  Aug. 29, 2011 News Release; *see also* Oct. 3, 2011 News Release (stating that Ceva France's products include Vectra®, D.A.P.®, Feliway®, and Senilife®).  In addition, certain products manufactured by Ceva France are marketed by Ceva USA.  Pls.' Opp'n Ex. 42 at 6, Altresyn® product information sheet, ECF No. 22-45 at 7 (stating that drug which suppresses estrus in mares is manufactured for Ceva France and marketed by Ceva USA); Pls.' Opp'n Ex. 43 at 7, Material Safety Data Sheet for Feliway, ECF No. 22-46 at 8 (stating that feline pheromone product is exported by Ceva France and marketed by Ceva USA).  There is no evidence in the

present record regarding the extent to which Ceva France sells those products *in Georgia*, either directly or through Ceva USA.

There is also evidence that Ceva USA operates separately from Ceva France. Ceva USA's board operates independently from the board of Ceva France, with separate meetings. Strait Decl. ¶¶ 15-16. Ceva France and Ceva USA maintain separate financial accounts and separate profit and loss statements. *Id.* ¶¶ 19-20, 29. And Ceva U.S. Holdings files its own federal tax and state returns in the United States on behalf of its subsidiaries, including Ceva USA. *Id.* ¶¶ 21, 23. Ceva USA does participate in Ceva France's global general and product liability insurance policies and is invoiced by Ceva France for its share of the premiums. *Id.* ¶ 25. Ceva USA's director and officer insurance, workers compensation insurance, and automobile liability insurance policies are maintained in the United States under group policies that cover Ceva U.S. Holdings, Ceva USA, and Biomune Company. *Id.* Ceva USA pays its own expenses, including employee salaries. *Id.* ¶ 28.

2. *Discussion*

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002). If, however, "'the subsidiary is merely an agent through which the parent company

conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent'" and the parent can be considered "'to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction.'" *Id.* (quoting Charles Alan Wright & Arthur R. Miller, 4A Fed. Practice & Procedure § 1069.4 (3d ed. 2002)). Therefore, to establish jurisdiction over Ceva France based on the conduct of Ceva USA, Merial must demonstrate that Ceva USA is the entity through which Ceva France conducts "substantial business activity" in Georgia. *Id.* "Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Id.* at 1272 n.11 (internal quotation marks omitted).

In *Meier*, the Eleventh Circuit examined the relationship between a Bahamian corporation that operated a resort in the Bahamas and its Florida subsidiaries to determine whether personal jurisdiction existed over the parent company in Florida based on the conduct of the subsidiaries. The Eleventh Circuit noted that the subsidiaries (1) solicited reservations for the

parent company resort, (2) coordinated more than 50% of the parent company resort's guests, (3) coordinated all marketing and advertising for the parent company resort, (4) provided accounting and collection services for the parent company resort, (5) managed the parent company resort's Florida bank accounts, and (6) performed business activities exclusively for the parent company resort. *Id.* at 1272-73. Based on this evidence, the Eleventh Circuit found that the evidence "strongly suggests that the Florida subsidiaries were mere instrumentalities" of the non-resident defendants and that the non-resident defendants were subject to personal jurisdiction in Florida. *Id.* at 1273-74. The Georgia Court of Appeals followed a similar analysis in *Mitsubishi Motors Corp. v. Colemon*, concluding that Georgia law permitted personal jurisdiction over a parent company that transacted business in Georgia through its subsidiary. 290 Ga. App. 86, 87-89, 658 S.E.2d 843, 846-47 (2008). The parent company admitted that its wholly-owned subsidiary manufactured, marketed, financed, and distributed the parent company's vehicles in the United States and that the subsidiary distributed vehicles in Georgia for the parent corporation. *Id.* at 87, 658 S.E.2d at 846. Therefore, the parent company transacted business in Georgia through its subsidiary, and personal jurisdiction over the parent company was proper. *Id.* at 88, 658 S.E.2d at 846. Fellow district

courts have reached similar conclusions. *See Coca-Cola Co. v. Procter & Gamble Co.*, 595 F. Supp. 304, 308 (N.D. Ga. 1983) (finding that the parent company's "pervasive and tight control" over its subsidiaries, which was "accomplished primarily through interlocking directorates, commonalilty of officers, and necessity of parent review and approval of subsidiary actions" rendered the "subsidiaries functionally equivalent to departments or divisions of the parent corporation, and therefore jurisdiction over the parent company was authorized based on the "close, symbiotic relationship between" the parent and its subsidiaries)*; see also Cartel Asset Mgmt., Inc. v. Altisource Portfolio Solutions, S.A.*, No. 1:11-CV-2612-TWT, 2012 WL 39559, at *5 (N.D. Ga. Jan. 6, 2012) (finding that parent was subject to personal jurisdiction in Georgia through its subsidiaries because parent's website and financial filings stated that parent provided services "either 'through its subsidiaries' or 'together with its subsidiaries'").

The present record, which is limited because no discovery has occurred, does not establish definitively that Ceva France conducts substantial business activity *in Georgia* through Ceva USA. Therefore, the Court cannot conclusively rule that Ceva USA's contacts with Georgia are sufficient to extend jurisdiction over Ceva France. Sufficient evidence does exist,

however, to authorize Merial to conduct jurisdictional discovery.

"[J]urisdictional discovery . . . is appropriate where the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (internal quotation marks omitted).  Merial asserts that Ceva France has direct contacts with Georgia for several reasons, including Ceva France's contract with a distributor to sell its "Comfort Zone" products in the United States.  Merial also alleges (and has presented evidence) that Ceva France sells a number of its products in the United States through Ceva USA.  Though Merial contends that Ceva France sells various products in Georgia, the present record does not reflect the extent to which Ceva France, either directly or through Ceva USA, conducts business in Georgia.  The Court is satisfied that jurisdictional discovery will permit Merial to discover the extent of Ceva France's contacts with Georgia.  Therefore, Ceva France's motion to dismiss is denied, and Merial shall be permitted to conduct jurisdictional discovery.

## II.  Merial's Claims Against Ceva USA

Merial asserts a claim of induced infringement against Ceva USA.  Ceva USA contends that Merial's Amended Complaint fails to

state a claim for induced infringement and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

A.   Factual Allegations

Ceva France and its wholly-owned subsidiary, Horizon Valley Generic, Inc. ("Horizon Valley") plan to introduce generic fipronil and methoprene products into the U.S. market as an alternative to Frontline Plus.  Am. Compl. ¶¶ 24, 29, 35, 49, ECF No. 8.  Merial contends that the generic Frontline Plus products would infringe one or more claims of the '329 Patent. *Id.* ¶¶ 24, 49.  Ceva France has had notice of the '329 Patent because Ceva France sought to license the '329 Patent, and Ceva USA has also had notice of the '329 Patent.  *Id.* ¶¶ 33, 52.  A Ceva France representative informed Merial that if Merial would not grant Ceva France a license to the '329 Patent, then Ceva France would attempt to invalidate the '329 Patent.  *Id.* ¶ 34.

Merial alleges that "Ceva USA has at least induced Ceva France and [Horizon Valley]'s planned infringement of one or more claims of the '329 Patent . . . by intentionally encouraging, aiding, and/or otherwise causing Ceva [France]'s planned infringement of the '329 Patent."  *Id.* ¶ 51.  Merial further alleges that "Ceva USA provided resources and information to Ceva France and [Horizon Valley] with the knowledge and intent that such assistance would induce Ceva [France]'s infringement of Merial's '329 Patent."  *Id.*  In addition, Merial contends that "employees of Ceva USA knowingly and intentionally provided Ceva France and [Horizon Valley] with

necessary support, including support with regard to marketing, sales, EPA regulatory applications, and distribution, for Ceva [France]'s planned infringing generic FRONTLINE PLUS products." *Id.*

   B.   Discussion

   "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  To prevail on an inducement claim under § 271(b), Merial must show (1) direct infringement of the patent and (2) that Ceva USA "knowingly induced infringement and possessed specific intent to encourage another's infringement."   *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005); *accord Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (holding that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement").   Ceva USA's motion to dismiss focuses only on the intent element and does not argue that Merial failed to plead the requisite underlying direct infringement of the '329 Patent.   Therefore, the Court will address only the intent element.

   To survive Ceva USA's motion to dismiss, Merial's Amended Complaint "must contain facts plausibly showing that" Ceva USA intended Ceva France to infringe the '329 Patent and knew that Ceva France's actions would constitute direct infringement. *In*

*re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). "Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *MEMC Elec. Materials, Inc.*, 420 F.3d at 1379 (internal quotation marks omitted).

Ceva USA argues that Merial only alleges that it provided general regulatory and marketing advice to Ceva France. If the Court finds that such conduct is sufficient for induced infringement liability, Ceva USA suggests that anyone who provides general marketing or regulatory advice to a foreign corporation could be liable for induced infringement. Ceva USA reads Merial's complaint too narrowly. Reading the Amended Complaint in the light most favorable to Merial as the Court must do at this stage of the litigation, it is clear that Merial alleges that Ceva USA did much more than provide general marketing and regulatory consulting. Merial alleges that Ceva USA intentionally provided Ceva France and Horizon Valley with broad support for the generic Frontline Plus products, including marketing support, sales support, regulatory application support, and distribution support. Merial also alleges that Horizon Valley—the U.S. entity which Ceva France claims was actually pursuing introduction of generic Frontline Plus

products on behalf of Ceva France—was merely a shell company of Ceva France and that Ceva USA's expertise and support were pivotal to the launch of the generic Frontline Plus products. Merial further alleges that Ceva USA knew that if Ceva France launched the generic Frontline Plus product, such conduct would constitute infringement of the '329 Patent (assuming the '329 Patent is valid).   Based on these allegations, the Court is satisfied that Merial's Amended Complaint states a claim against Ceva USA for induced infringement.   Therefore, Merial may, during jurisdictional discovery, investigate the scope of Ceva USA's involvement in the efforts of Ceva France and Horizon Valley to introduce generic fipronil and methoprene products to compete with Merial's Frontline Plus products.   If, after discovery, it becomes clear that Ceva USA's role in the planned launch of Ceva France's fipronil and methoprene products was insignificant and did not induce infringement by Ceva France or Horizon Valley, then those issues can be resolved at summary judgment.   But Merial's Amended Complaint is sufficient to survive Ceva USA's motion to dismiss.

## III. Dismissal In Deference to Delaware Action

Defendants also seek dismissal of this action in favor of a declaratory judgment action filed by Ceva France against Merial in the United States District Court for the District of Delaware.   In that action, which was filed after this action,

Ceva France seeks a declaration that its fipronil and methoprene products do not infringe any valid claims of the '329 Patent and that one or more claims of the '329 Patent is invalid. *See generally* Pls.' Opp'n Ex. 3, Compl., ECF No. 1 in *Horizon Valley Generics Inc. v. Merial Ltd.*, No. 1:13-cv-147-UNA (D. Del. Jan. 28, 2013), ECF No. 22-4. The Court declines to dismiss this action in favor of the Delaware action; the first-to-file rule does not support such a dismissal. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

CONCLUSION

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss and grants Merial's request for jurisdictional discovery. The Court will issue a Rules 16/26 Scheduling/Discovery Order today with which the parties shall comply consistent with the Court's rulings in this Order.


IT IS SO ORDERED, this 4th day of September, 2013.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
